Todd D. Muhlstock
**Baker Sanders LLC**
100 Garden City Plaza, Suite 500
Garden City, NY  11530
Telephone:  (516) 741-4799
Facsimile:  (516) 741-3777
TMuhlstock@BakerSanders.com

*Attorney for Plaintiff*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Kerri Yingst, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NOVARTIS AG, NOVARTIS CORPORATION, and,<br><br>NOVARTIS CONSUMER HEALTH, INC.,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq* ;<br>(2) Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, by and through the undersigned counsel, files this complaint and asserts as follows:

## NATURE OF THE ACTION

1. This is an action for damages and injunctive relief arising out of Novartis' sale of Excedrin Migraine at a higher price than the pharmacologically identical product Excedrin Extra Strength.

2. Defendants' conduct has harmed consumers, including Plaintiff and a class of similarly situated individuals, who paid more for Excedrin Migraine than they would have paid for Excedrin Extra Strength.

## THE PARTIES

3. Plaintiff Kerri Yingst is a citizen of New Jersey who resides in Cherry Hill, New Jersey. Plaintiff has purchased Excedrin Migraine repeatedly over the last eight years, using the medication to treat her recurrent migraines. Plaintiff noticed that Excedrin Migraine and Excedrin Extra Strength seemed to consist of identical ingredients but understood that because Excedrin Migraine was sold at a higher price, it was a more effective product for migraine relief.

4. Defendant Novartis AG, the parent company of the Novartis group of entities, is a multinational pharmaceutical company headquartered at Fabrikstrasse 2, CH-4002 Basel, Switzerland.

5. Defendant Novartis Corporation is a New York corporation headquartered at 1 South Ridgedale Avenue in East Hanover, New Jersey. Novartis Corporation is the U.S. arm of Defendant Novartis AG and oversees research and development, manufacturing, sales, and marketing of pharmaceutical products, including Excedrin Migraine and Excedrin Extra Strength.

6. Defendant Novartis Consumer Health, Inc. is a Delaware corporation headquartered at 200 Kimball Drive in Parsippany, New Jersey.  Novartis Consumer Health, Inc. engages in research and development, manufacturing, sales, and marketing of over-the-counter pharmaceutical products, including Excedrin Migraine and Excedrin Extra Strength.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the proposed class has more than 100 members, and (c) the amount in controversy exceeds $5 million.

8. This Court has personal jurisdiction over Defendants because Defendants reside in and regularly transact business within the State of New Jersey.

9. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because Defendants Novartis Corporation and Novartis Consumer Health, Inc. reside in this District.

## FACTUAL ALLEGATIONS

### About Excedrin Migraine and Excedrin Extra Strength

10. Excedrin Migraine and Excedrin Extra Strength ("Excedrin ES") are over-the-counter combination pain relievers.

11. Excedrin Extra Strength was first approved in the 1960s by the Food and Drug Administration for the temporary relief of minor aches and pains due to headache.  Each unit of Excedrin Extra Strength currently contains 250 milligrams of acetaminophen, 250 milligrams of aspirin, and 65 milligrams of caffeine as the active ingredients.  This formulation of Excedrin Extra Strength has been marketed in the United States since 1978.

12. In January 1997, Bristol-Myers Squibb, Co. sought FDA approval of a migraine indication for Excedrin Extra Strength. Bristol-Myers presented the FDA with clinical studies indicating Excedrin Extra Strength was effective at providing relief of migraine pain and asked to add this information to the drug's label. The formulation remained unchanged.

13. The FDA approved Excedrin Migraine in January 1998 for the temporary relief of mild to moderate migraine headache pain with the same formulation and dosage as Excedrin Extra Strength. According to a Bristol-Myers press release on the approval, Excedrin Migraine was given its own trademark and packaging "in order to provide important information about appropriate use and when to consult a doctor" but would be available at the same suggested retail price as Excedrin Extra Strength.

14. Newspaper ads published in February 1998 emphasized the identical formulation of Excedrin Migraine and Excedrin Extra Strength. The ads depicted the two products side-by-side and stated, "Clinical research has just proven that the formula in Excedrin actually relieves migraine pain. And because of the distinct nature of migraines, the FDA worked with Excedrin to develop a different package with specific information for migraine sufferers. So now next to Excedrin, there's a new package – same medicine – called Excedrin Migraine."

15. In August 2005, the Novartis defendants purchased the Excedrin brand from Bristol-Myers and took over the manufacture and sale of the products, including the Migraine and Extra Strength versions.

**Higher Price Charged for Excedrin Migraine**

16. When Excedrin Migraine was marketed in the United States, Bristol-Myers sold the products at the same wholesale price and provided the same suggested retail price for both products.

17. Defendants currently sell Excedrin Migraine and Excedrin Extra Strength at different wholesale prices that reflect a premium for the Migraine version. Defendants sell 24-count packages of Excedrin Migraine at a wholesale price of $3.60, a 12.5% premium over the $3.20 wholesale price for Excedrin Extra Strength. Defendants sell 100-count packages at $10.25 wholesale, a 13.26% premium over the $9.05 wholesale price for Excedrin Extra Strength, and 200-count packages at $13.50, a 12.5% premium over the $12.00 wholesale price for Excedrin Extra Strength.

18. Defendants' higher wholesale prices for Excedrin Migraine are reflected in the prices retailers charge consumers for Excedrin Migraine and Excedrin Extra Strength. Walmart.com, for instance, sells 100-count packages of Excedrin Migraine at a $0.50 premium over Excedrin Extra Strength. Rite-Aid Pharmacy sells 100-count packages of Excedrin Migraine at a $0.50 premium and 200-count package at a $1.00 premium. Amazon.com charges a $1.05 premium for a 300-count package of Excedrin Migraine, while Walgreens charges a $1.00 premium for a 200-count package.

19. By selling Excedrin Migraine at a higher wholesale price that is carried through to retail prices paid by consumers, Defendants are engaging in an unconscionable business practice in violation of the New Jersey Consumer Fraud Act.

**Plaintiff's Experience**

20. In approximately October, 2013, Plaintiff purchased Excedrin Migraine in Cherry Hill, New Jersey for the purpose of relieving migraines. Plaintiff paid more for the package of Excedrin Migraine than the advertised price for the pharmacologically identical product, Excedrin Extra Strength.

21.     Plaintiff noticed that Excedrin Migraine and Excedrin Extra Strength seemed to consist of identical ingredients in identical quantities but believed that because Excedrin Migraine was sold at a higher price, it was a more effective product for migraine relief than Excedrin Extra Strength.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff Yingst brings this action pursuant to the Federal Rules of Civil Procedure on behalf of herself and a class defined as:

> All persons who purchased Excedrin Migraine at a higher price than Excedrin Extra Strength on or after August 1, 2005.

23.     **Numerosity.**  The members of the proposed class are estimated to be in the tens of thousands at least, making individual joinder of all class members impracticable.  Plaintiff will determine the exact number and identity of class members through appropriate discovery.

24.     **Commonality.**  Plaintiff's and class members' claims raise common factual and legal questions that predominate over individualized inquiries.  Common legal and factual questions that can be answered for all class members through a single class-wide proceeding include, but are not limited to, the following:

   a.     Are Excedrin Extra Strength and Excedrin Migraine pharmacologically identical products?

   b.     Do Defendants sell Excedrin Migraine at a higher price than Excedrin Extra Strength?

25.     **Typicality.**  Plaintiff's claims are typical of the claims of class members because each claim arises from the same practices by Defendants.

26. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff's interests do not conflict with other class members' interests and Plaintiff has retained counsel experienced in complex class action litigation and consumer fraud lawsuits to vigorously prosecute this action on behalf of the class.

27. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the class. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation would also result in delay and increased expenses to all parties, over-burden the judicial system, and present a potential for inconsistent and contradictory judgments. Class treatment will ensure that all claims and claimants receive fair, consistent, and efficient adjudication.

## FIRST CAUSE OF ACTION

**(For Violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*)**

28. Plaintiff incorporates the above allegations by reference.

29. Over-the-counter drugs, such as Excedrin Migraine and Excedrin ES, are "merchandise" as defined by N.J.S.A. § 56:8-1(c).

30. As described herein, Defendant's acts and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes.

31. Section 56:8-2 of the New Jersey Consumer Fraud Act ("NJCFA") prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale

or advertisement of any merchandise." Defendants sell Excedrin Migraine to consumers at a higher price than the pharmacologically identical product, Excedrin Extra Strength.

32. Plaintiff and class members purchased Defendants' Excedrin Migraine product and have lost money. Defendants' conduct is a proximate cause of Plaintiff's and the class members' injuries because they paid a price premium due to Defendants' unconscionable practice of selling Excedrin Migraine at a premium over the pharmacologically identical product, Excedrin Extra Strength.

33. By reason of Defendants' violations of New Jersey's Consumer Fraud Act, Plaintiff and class members are entitled to recover all monies Defendants acquired through their practices as alleged herein pursuant to New Jersey Statute sections 56:8-2.11, 56:8-2.12, and 56:5-2.13. Plaintiff and class members are further entitled to recover threefold the damages sustained pursuant to New Jersey Statute section 56:8-19.

34. Plaintiff, on behalf of herself and the class, seeks equitable and injunctive relief, including restitution of moneys paid for Excedrin Migraine above and beyond the price of Excedrin Extra Strength, and other appropriate penalties, including treble damages, attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment)

35. Plaintiff incorporates the above allegations by reference.

36. A merchandiser is unjustly enriched when it receives a benefit from a purchaser and it would be unjust and inequitable for the merchandiser to retain that benefit.

37. Plaintiff and class members conferred a benefit on Defendants by purchasing Excedrin Migraine at a premium above Excedrin Extra Strength. Defendants have been unjustly

enriched in retaining the revenues derived from Plaintiff and class members' purchase of Excedrin Migraine.

38. Plaintiff and class members suffered a monetary loss as a result of Defendants' unjust enrichment because they paid a price premium due to Defendants' unconscionable practice of selling Excedrin Migraine at a higher price than Excedrin Extra Strength. Defendants' retention of money gained as a result of its unconscionable practice is unjust and inequitable.

39. Plaintiff, on behalf of herself and the class members, seeks an order requiring Defendants to pay restitution to Plaintiff and class members for money gained as a result of their unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of a class of similarly situated individuals, prays for the following relief:

A. Certification of this action as a class action on behalf of the class defined above, appointment of Plaintiff as the class representative, and appointment of Plaintiff's counsel as class counsel;

B. An award of injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the class;

C. An award of damages and treble damages;

D. An order that Defendants disgorge all profits wrongfully obtained through their illegal conduct;

E. An order that Defendants pay restitution to Plaintiff and the class;

F. An award to Plaintiff and the class for reasonable litigation expenses and attorneys' fees;

G. An award to Plaintiff and the class of pre- and post-judgment interest, to the extent allowable;

H. An award of such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable in the above referenced matter.

Dated: December 31, 2013   **Baker Sanders LLC**

               By: */s/ Todd D. Muhlstock*
               Todd D. Muhlstock
               Baker Sanders LLC
               100 Garden City Plaza, Suite 500
               Garden City, NY  11530
               Telephone:  (516) 741-4799
               Facsimile:  (516) 741-3777
               TDMecf@BakerSanders.com
               TMuhlstock@BakerSanders.com

               Eric Gibbs (pending Pro Hac Vice application)
               **Girard Gibbs LLP**
               601 California Street, 14th Floor
               San Francisco, CA 94108
               Telephone:  (415) 981-4800
               Facsimile:  (415) 981-4846

               *Attorneys for Plaintiff*