UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KERRI YINGST, on behalf of herself and all other similarly situated individuals,<br><br>               Plaintiff,<br>v.<br><br>NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS CONSUMER HEALTH, INC.,<br><br>               Defendants. | Civil Action No.: 13-7919<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court upon motion of Defendant Novartis Consumer Health, Inc. ("Defendant") to dismiss Plaintiff Kerri Yingst's ("Plaintiff") complaint pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 13.] Plaintiff opposes the motion. [ECF No. 25.] The motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion is granted.

**II.    BACKGROUND**

In October 2013, Plaintiff purchased Excedrin Migraine in Cherry Hill, New Jersey in order to relieve her migraines. (Compl. ¶ 20.) Around the time of purchase, "Plaintiff noticed that Excedrin Migraine and Excedrin Extra Strength seemed to consist of identical ingredients in identical quantities but believed that because Excedrin Migraine was sold at a higher price, it was a more effective product for migraine relief than Excedrin Extra Strength." (Id. at ¶ 21.) Plaintiff brings this lawsuit under the New Jersey Consumer Fraud Act (the "NJCFA" or the "Act") and New Jersey common law on behalf of "[a]ll persons who purchased Excedrin

Migraine at a higher price than Excedrin Extra Strength on or after August 1, 2005". (Id. at ¶ 22.)

Excedrin Extra Strength is an over-the-counter combination pain reliever that was first approved in the 1960s by the Food and Drug Administration (the "FDA") for the temporary relief of minor aches and pains due to headache. (Id. at ¶¶ 10-11.) Each unit of Excedrin Extra Strength contains active ingredients of 250 milligrams of acetaminophen, 250 milligrams of aspirin, and 65 milligrams of caffeine. (Id. at ¶ 11.) The FDA approved Excedrin Migraine in January 1998 for the temporary relief of mild to moderate migraine headache pain with the same formulation and dosage as Excedrin Extra Strength. (Id. at ¶ 13.) As Plaintiff notes, "[n]ewspaper ads published in February 1998 emphasized the identical formulation of Excedrin Migraine and Excedrin Extra Strength." (Id. at ¶ 14.) These ads stated: "Clinical research has just proven that the formula in Excedrin actually relieves migraine pain. And because of the distinct nature of migraines, the FDA worked with Excedrin to develop a different package with specific information for migraine sufferers. So now next to Excedrin, there's a new package—same medicine—called Excedrin Migraine." (Id.)

Briston-Myers Squibb, Co., Defendant's predecessor in interest, sold both Excedrin Extra Strength and Excedrin Migraine "at the same wholesale price and provided the same suggested retail price for both products." (Id. at ¶ 16.) Currently, Defendant sells 24-count packages of Excedrin Migraine at a wholesale price of $3.60 and Excedrin Extra Strength at a wholesale price of $3.20. (Id. at ¶ 17.) Defendant sells 100-count packages of Excedrin Migraine at $10.25 wholesale, and Excedrin Extra Strength at $9.05 wholesale. (Id.) Defendant also sells 200-count packages of Excedrin Migraine at $13.50 wholesale, compared to the $12.00 wholesale price for Excedrin Extra Strength. (Id.) These wholesale prices, Plaintiff alleges, are reflected in the higher retail prices

2

paid by customers at stores like Walmart, Amazon.com, Rite-Aid, and Walgreens. (Id. at ¶ 18.) Amazon.com is home to the highest retail price differential alleged by Plaintiff: a $1.05 variance between the 300-count packages of Excedrin Extra Strength and Excedrin Migraine. (Id.)

### III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, U.S. at 678.

### IV. DISCUSSION

Plaintiff asserts a violation of the NJCFA and a common law claim for unjust enrichment, (Compl. ¶¶ 28-39), based on the pricing of Defendant's product, Excedrin Migraine. Defendant argues that neither of these theories entitle Plaintiff to monetary damages and therefore her complaint should be dismissed. As set forth below, the Court agrees with Defendant that the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief.

#### A. New Jersey Consumer Fraud Act

The NJCFA—lauded as "one of the strongest consumer protection laws in the nation",

3

Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 748 (N.J. 2009)—provides relief to consumers who suffer "fraudulent practices in the market place." Lee v. Carter-Reed Co., 4 A.3d 561, 576 (N.J. 2010); Furst v. Einstein Moomjy, Inc., 860 A.2d 435 (N.J. 2004). Enacted in 1960, the NJCFA "was passed in response to widespread complaints about selling practices which victimized consumers." Sickles v. Cabot Corp., 877 A.2d 267, 276 (N.J. Super. Ct. App. Div. 2005) (citing Fenwick v. Kay Am. Jeep, Inc., 371 A.2d 13, 16 (N.J. 1977)). The Act was intended to "root out consumer fraud" and "protect consumers" by eliminating "sharp practices and dealings in the marketing of merchandise" in which a consumer could be "lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." Id. (citing Lemelledo v. Beneficial Mgmt. Corp. of Am., 696 A.2d 546, 551 (N.J. 1997)). In light of its legislative history, courts have consistently noted that the NJCFA should be "construed liberally to accomplish its broad purpose of safeguarding the public." Lee, 4 A.3d at 577 (citing Furst, 860 A.2d at 440).

The Act provides that, in addition to legal or equitable relief, a plaintiff is entitled to treble damages, reasonable attorneys' fees, and reasonable costs, N.J.S.A. 56:8–19, if she proves "that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007); Lee, 4 A.3d at 576. Under the NJCFA, an "unlawful practice" is "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. § 56:8-2.

Plaintiff does not appear to argue that Defendant committed any affirmative act of

4

deception, fraud, false pretense, false promise, or misrepresentation; nor does Plaintiff argue that Defendant knowingly concealed, suppressed, or omitted any material fact with intent to induce reliance. (Compl. ¶ 32; Pl.'s Opp'n p. 4.) Instead, Plaintiff strenuously argues that Defendant engaged in an "unconscionable commercial practice" within the meaning of the NJCFA by "us[ing] the FDA's requirement that Excedrin Migraine and Excedrin Extra Strength have separate packaging as a means to extract additional payments from consumers [by charging a higher price for Excedrin Migraine] while providing them with no additional benefits." (Pl.'s Opp'n p. 4.) Defendant contends that the price differential between Excedrin Migraine and Excedrin Extra Strength is not enough, by itself, to constitute an "unconscionable commercial practice" and that the Court would be "undu[ly] interfer[ing] with free market forces" if it were to find that such pricing tactics triggered NJCFA liability. (Def.'s Mot. pp. 6-9.) The Court must therefore determine whether Defendant's pricing of Excedrin Migraine—$1.50 higher, at most, than Excedrin Extra Strength, (Comp. ¶ 17)—is an "unconscionable commercial practice" within the meaning of the NJCFA.

The phrase "unconscionable commercial practice" is not defined in the Act. However, this locution was added to the definition of "unlawful practice" in 1971, N.J.S.A. 56:8-2, L. 1971, c. 247, § 1 (June 29, 1971); Sickles, 379 877 A.2d at 276, evidencing a more expansive reach than deception alone, see In re O'Brien, 423 B.R. 477, 488 (Bankr. D.N.J. 2010) aff'd sub nom., Cleveland v. O'Brien, 2010 WL 4703781 (D.N.J. Nov. 12, 2010). Indeed, while recognizing that "unconscionability" is an "amorphous concept", Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994), the New Jersey Supreme Court has described "unconscionable commercial practice" as an act lacking "good faith, honesty in fact and observance of fair dealing." Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 655 A.2d 417, 429 (N.J. 1995)

5

(citing Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063, 1066 (N.J. 1988)); see also Black's Law Dictionary 1561 (8th ed. 2004) (defining an "unconscionable act" as one "affronting the sense of justice, decency, or reasonableness"); Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc., 357 F. Supp. 2d 788, 801 (D.N.J. 2005) (describing the unconscionability standard in New Jersey contract law as whether there is "an exchange of promises that is so one-sided as to 'shock the conscience' of the court"). Like the NJCFA itself, "[t]he word 'unconscionable' must be interpreted liberally so as to effectuate the public purpose of the [NJ]CFA." Associates Home Equity Servs., Inc. v. Troup, 778 A.2d 529, 543 (N.J. Super. Ct. App. Div. 2001).

Here, there is no dispute that both Excedrin Migraine and Excedrin Extra Strength were properly labeled and contained no misinformation regarding the properties of their respective medications. (Pl.'s Opp'n p. 6 ("Plaintiff, however, does not challenge the labeling of [Defendant]'s Excedrin products.").) Indeed, Plaintiff admits that "[n]ewspaper ads published in February 1998 emphasized the identical formulation of Excedrin Migraine and Excedrin Extra Strength", (Compl. ¶ 14), and that she noticed "Excedrin Migraine and Excedrin Extra Strength seemed to consist of identical ingredients in identical quantities", (Compl. ¶ 21). The only contention is that Defendant engaged in an "unconscionable commercial practice" by charging a higher price for Excedrin Migraine than for Excedrin Extra Strength, despite the fact that they are pharmacologically identical products. (Compl. ¶ 32.) Accordingly, because Plaintiff concedes there was no dishonesty by Defendant, its pricing of Excedrin Migraine is not an act that lacks "good faith [or] honesty in fact". See Turf Lawnmower Repair, Inc., 655 A.2d at 429; see also Cox, 647 A.2d at 463 (noting that the court could "not detect any bad faith" under the unconscionability prong of the NJCFA despite a finding that the defendant breached a contract);

Seidenberg v. Summit Bank, 348 N.J. Super. 243, 262, 791 A.2d 1068, 1079 (App. Div. 2002) (Noting that, under New Jersey contract law, that "[a]n allegation of bad faith . . . should not be permitted to be advanced in the abstract and absent improper motive."); Black's Law Dictionary 149 (8th ed. 2004) (defining "bad faith" as "[d]ishonesty of belief or purpose").

Nor can Plaintiff establish that Defendant's pricing of Excedrin Migraine lacks "fair dealing" under the unconscionability prong of the NJCFA. See id. Plaintiff does not cite any case, and the Court is aware of none, in which an "unconscionable commercial practice" was found under the NJCFA based solely upon the disparate pricing of substantively identical products manufactured by the same defendant. However, while such a dearth of case law, by itself, is not fatal to Plaintiff's claim, appropriate circumstances have not been adequately demonstrated in this case to establish a plausible violation of the NJCFA. According to her complaint, Plaintiff paid, at most, $1.05 more for the 300-count package of Excedrin Migraine than the 300-count package of Excedrin Extra Strength. (Id. at ¶ 18.) Such a minor detriment does not rise to the level of unfair dealing: Defendant utilized the market forces present in our capitalist society in order to charge a higher price for Excedrin Migraine. This slight price differential is within the bounds of reasonableness and concomitantly outside the ambit of the NJCFA.

Moreover, cases in which an "unconscionable commercial practice" was found involve circumstances much more distinct from those here. See, e.g., Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 525 (D.N.J. 2008) (denying defendant's motion to dismiss on "unconscionability" grounds when the defendant sold defective automobiles and was allegedly aware of "defective pollen filters, pollen filter housing seals, plenum drains, powertrains, transmissions and transmission control modules"); Real v. Radir Wheels, Inc., 969 A.2d 1069 (N.J. 2009)

(concluding defendant "intentionally had engaged in unconscionable commercial practices in connection with the advertisement and sale of merchandise" by falsely representing condition of car); Troup, 778 A.2d at 543 (concluding that a reasonable jury could find plaintiff and third-party defendants engaged in unconscionable business practice by imposing unfavorable credit terms on loan).

To be sure, Defendant created a pricing regime in which migraine sufferers must pay a higher price for Excedrin Migraine pills that are pharmacologically identical to Excedrin Extra Strength in order to obtain the proper directions and warnings. However, while this conduct may be strategic, not all such behavior is proscribed by law, as is the case here. For the reasons set forth above, the Court finds that Defendant's conduct was not an "unconscionable commercial practice" and therefore grants Defendant's motion to dismiss with respect to the NJCFA.

### B. Unjust Enrichment

Under New Jersey law, a "constructive or *quasi*-contract" is the vehicle by which a plaintiff may enforce a "public duty" to "prevent unjust enrichment or unconscionable benefit or advantage." Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir. 1983). "[I]n order to state a claim for unjust enrichment, a plaintiff must allege (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (citing Restatement (First) of Restitution § 1 (1937)). The unjust enrichment doctrine requires that "a plaintiff show that it 'expected remuneration from defendant at the time it performed or conferred a benefit on defendant' and that the 'failure of remuneration enriched defendant beyond its contractual rights.'" Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (citing VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554,

641 A.2d 519, 526 (1994)).

Plaintiff does not allege a cognizable claim of unjust enrichment. As discussed above, Plaintiff does not allege any misrepresentation or misinformation on Defendant's part. (See Pl.'s Opp'n p. 6 ("Plaintiff, however, does not challenge the labeling of [Defendant]'s Excedrin products.").) There is also no contention that Excedrin Migraine did not relieve Plaintiff's illness or that Excedrin Extra Strength relieved Plaintiff's migraines better than Excedrin Migraine. As this Court stated in Adamson, "[t]o recover on the theory of quasi-contract the plaintiff[] must prove that defendant was enriched . . . received a benefit, and that retention of the benefit without payment therefor would be unjust." Adamson, 463 F. Supp. 2d at 505 (citing Callano v. Oakwood Park Homes Corp., 219 A.2d 332 (N.J. Super. Ct. App. Div. 1966)). Plaintiff paid for Excedrin Migraine and presumably obtained relief from her migraine; as Defendant puts it: "[P]laintiff deliberately purchased the higher-priced product and received exactly what she paid for." (Def.'s Reply p. 6.) While Defendant indeed charged a higher price for Excedrin Migraine than for the pharmacologically identical Excedrin Extra Strength, the Court cannot say that there was anything "unjust" about Plaintiff's particular transaction. Accordingly, the Court grants Defendant's motion to dismiss with respect to Plaintiff's unjust enrichment claim.

V.  **CONCLUSION**

For the reasons set forth above, **IT IS** on this 24th day of November 2014,

**ORDERED** that Defendant's motion to dismiss pursuant to Rule 12(b)(6) [ECF No. 44] is **GRANTED** without prejudice; and it is further

**ORDERED** that Plaintiff is granted thirty days to file an amended complaint, which cures the pleading deficiencies as set forth by the Court.

_____
**CLAIRE C. CECCHI, U.S.D.J.**